# 23-2744-cv(L)
## 23-2798-cv(M)

## In the
## United States Court of Appeals
## For the Eighth Circuit



In re: T-Mobile Customer Data Security Breach Litigation,

_____

VEERA DARUWALLA, WASHINGTON WESTERN, 2:23-CV-01118,
JOHN G. COOKE, WASHINGTON WESTERN, 2:21-CV-01324, MICHAEL MARCH,
WASHINGTON WESTERN, 2:21-CV-01118, PETER LUNA, WASHINGTON
WESTERN, 2:21-CV-01324, LAVICICIA STURDIVANT, WASHINGTON
WESTERN, 2:21-CV-01118,

*Plaintiffs-Appellees,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI (KANSAS CITY)
*(See inside cover for continuation of caption)*

## OPENING BRIEF OF CASSIE HAMPE

ROBERT WILLIAM CLORE, ESQ.
BANDAS LAW FIRM, P.C.
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
(361) 698-5200
rclore@bandaslawfirm.com

ANTHONY E. LACROIX, ESQ.
LACROIX LAW FIRM, LLC
1600 Genessee, Suite 956
Kansas City, Missouri 64102
(816) 399-4380
tony@lacroixlawkc.com

*Attorneys for Objector-Appellant*

19852

—————————————————

LEOTHA SCOTT-BOONE, WASHINGTON WESTERN, 2:21-CV-01324, STEPHANIE ESPANOZA, WASHINGTON WESTERN, 2:21-CV-01119, JACK PRECOUR, WASHINGTON WESTERN, 2:21-CV-01415, ALEX PYGIN, WASHINGTON WESTERN, 2:21-CV-01119, WILLIAM CAPTAIN REED, WASHINGTON WESTERN, 2:21-CV-01415, STEPHEN J. VASH, GEORGIA NORTHERN, 1:21-CV-03384, CESAR LOPEZ, WASHINGTON WESTERN, 2:21-CV-01415, JONATHAN MORALES, WASHINGTON WESTERN, 2:21-CV-01119, EDMUND METZGER, NEW YORK EASTERN, 2:21-CV-04721, THOMASINA ENOCH, WASHINGTON WESTERN, 2:21-CV-01415, JUDITH WEIL, NEW YORK EASTERN, 2:21-CV-04721, MARSHALL P. JONES, JR., WASHINGTON WESTERN, 2:21-CV-01415, ZORKA LIPOVIC, NEW YORK EASTERN, 2:21-CV-04721, CORNELIA CLAY FULGHUM, WASHINGTON WESTERN, 2:21-CV-01415, MARIA RAPESTKAYA, NEW YORK EASTERN, 2:21-CV-04721, LINDA SONG, WASHINGTON WESTERN, 2:21-CV-01460, WILLIAM MABE, NEW YORK EASTERN, 2:21-CV-04721, RACHEL GURLEY, WASHINGTON WESTERN, 2:21-CV-01460, MARINA LIPOVIC, NEW YORK EASTERN, 2:21-CV-04721, ANDREW LUNA, WASHINGTON WESTERN, 2:21-CV-01460, DEJAN DEX LIPOVIC, NEW YORK EASTERN, 2:21-CV-04721, MELANI GORDON, WASHINGTON WESTERN, 2:21-CV-01460, ALEKSANDAR LIPOVIC, NEW YORK EASTERN, 2:21-CV-04721, LEON CARP, WASHINGTON WESTERN, 2:21-CV-01130, DANIELA LIPOVIC, NEW YORK EASTERN, 2:21-CV-04721, CRYSTAL LAM, WASHINGTON WESTERN, 2:21-CV-01137, NIKOLA LIPOVIC, NEW YORK EASTERN, 2:21-CV-04721, NINA PHAN, WASHINGTON WESTERN, 2:21-CV-01137, HENRY THANG, CALIFORNIA NORTHERN, 5:21-CV-06473, DEIRDRE C. DONOVAN, WASHINGTON WESTERN, 2:21-CV-01138, JAMES ACHERMANN, CALIFORNIA NORTHERN, 3:21-08995, BETH BYRD, WASHINGTON WESTERN, 2:21-CV-01138, FRANKLIN HUGHES, WASHINGTON WESTERN, 2:21-CV-01139, ALLAN SPEILMAN, WASHINGTON WESTERN, 2:21-CV-01138, ANIA VILLALON, WASHINGTON WESTERN, 2:21-CV-01148, CORY BARTON, TEXAS SOUTHERN, 7:21-CV-00322, RANDALL NORRIS, WASHINGTON WESTERN, 2:21-CV-01153, MARK SAVICK, NEW JERSEY, 3:21-CV-16005, MISTY NORRIS, WASHINGTON WESTERN, 2:21-CV-01153, HASSAN SADRGILANY, NEW JERSEY, 3:21-CV-16155, VALERIE ROGOFF, WASHINGTON WESTERN, 2:21-CV-01157, DEBORAH DAMES, NEW JERSEY, 3:21-CV-16155, MICHAEL HARPER, WASHINGTON WESTERN, 2:21-CV-01169, RAYMOND CHRISTIE, NEW JERSEY, 3:21-CV-16181, SUE HARPER, WASHINGTON WESTERN, 2:21-CV-01169, IVETTE DELERME, NEW JERSEY, 3:21-CV-16299, MELANIE JAQUESS, WASHINGTON WESTERN, 2:21-CV-01169, THOMAS MACNISH, NEW JERSEY, 3:21-CV-16299, CHUCK SALLADE, WASHINGTON WESTERN, 2:21-CV-01169, JOSE PALOMINO, NEW JERSEY, 3:21-CV-16536, MICHAEL MALONE, WASHINGTON WESTERN, 2:21-CV-01169,

*Plaintiffs-Appellees,*

*(See inside cover for continuation of caption)*
—————————————————

————————————————

JESSICA TUCK, NEW JERSEY, 3:21-CV-16536, TIMOTHY AKINS, WASHINGTON WESTERN, 2:21-CV-01179, VAGISH SHANMUKH, CALIFORNIA NORTHERN, 5:21-CV-07581, TARA MILLHOUSE, WASHINGTON WESTERN, 2:21-CV-01179, BRIAN GRADY, OKLAHOMA WESTERN, 5:21-CV-00838, PAMELA LANE, WASHINGTON WESTERN, 2:21-CV-01179, MICHAEL JONES, OKLAHOMA WESTERN, 5:21-CV-00838, CEDRIC GAY, WASHINGTON WESTERN, 2:21-CV-01179, ALEXIS LOMAX, NEVADA, 2:21-CV-01764, LORI WILLIAMS, WASHINGTON WESTERN, 2:21-CV-01179, RICHARD WELLMAN, WASHINGTON WESTERN, 2:21-CV-01250, BRYAN MORTON, WASHINGTON WESTERN, 2:21-CV-01179, AUDREANA LAUREN LANG, CALIFORNIA NORTHERN, 5:21-CV-06879, SAJAN GEORGE, WASHINGTON WESTERN, 2:21-CV-01179, TIFFANY BENSEN, NEW YORK WESTERN, 6:21-CV-06628, CYNTHIA HALTON, WASHINGTON WESTERN, 2:21-CV-01179, STUART SCHUPLER, WASHINGTON WESTERN, 2:21-CV-01161, SEAN JORDAN, WASHINGTON WESTERN, 2:21-CV-01179, NAIMATULLAH NYAZEE, MISSOURI EASTERN, 4:21-CV-01517, TERRI MARBLE, WASHINGTON WESTERN, 2:21-CV-01179, TISHA SOTO, DAVID H. FEINBERG, CALIFORNIA CENTRAL, 2:21-CV-07531, MARIO GORDON, WASHINGTON WESTERN, 2:21-CV-01460, LISA M. JACKSON, CALIFORNIA CENTRAL, 2:21-CV-07531, DIEGO QUINTANILLA, WASHINGTON WESTERN, 2:21-CV-01415, LAKISATHA D. KING, CALIFORNIA CENTRAL, 2:21-CV-07531, PARK SUTTON, DANIEL SIMAAN, WASHINGTON WESTERN, 2:21-CV-01181, WILLIAM BURT, ALEXIS HUERTA, WASHINGTON WESTERN, 2:21-CV-01183, DEVON AVERY, WASHINGTON WESTERN, 2:21-CV-01189, BLONDEL GARNER, WASHINGTON WESTERN, 2:21-CV-01189, BRIAN HAYES, WASHINGTON WESTERN, 2:21-CV-01189, DANIEL MOON, WASHINGTON WESTERN, 2:21-CV-01189, TIMOTHY RYAN, WASHINGTON WESTERN, 2:21-CV-01189, SHEILA HAMILTON-BYNUM, WASHINGTON WESTERN, 2:21-CV-01190, DANIEL STRENFEL, WASHINGTON WESTERN, 2:21-CV-01208, RICHARD HALPERN, WASHINGTON WESTERN, 2:21-CV-01226, MARK GLINOGA, WASHINGTON WESTERN, 2:21-CV-01245, JAMES SMITH, WASHINGTON WESTERN, 2:21-CV-01245, JENNIFER STEPHENS, WASHINGTON WESTERN, 2:21-CV-01245, CHARLES POPP, WASHINGTON WESTERN, 2:21-CV-01245, RUDOLPH WINN, WASHINGTON WESTERN, 2:21-CV-01245, STEPHANIE MILLER, WASHINGTON WESTERN, 2:21-CV-01245, KARLA WILLIAMS, WASHINGTON WESTERN, 2:21-CV-01245, CHRIS JARVIS, WASHINGTON WESTERN, 2:21-CV-01245, MATTHEW BRACKMAN, WASHINGTON WESTERN, 2:21-CV-01277 and DINAH AUGUSTIN, WASHINGTON WESTERN, 2:21-CV-01321,

*Plaintiffs-Appellees,*

— v. —

T-MOBILE US, INC., DOES, 1 through 100, CALIFORNIA CENTRAL, 2:21-CV-07531 and T-MOBILE USA, INC.,

*Defendants,*

*(See inside cover for continuation of caption)*
————————————————

–––––––––––––––––––––––

– and –

CASSIE HAMPE,

*Objector-Appellant.*

–––––––––––––––––––––––

## Summary of the Case

This class action was brought by T-Mobile customers victimized by one of the largest data breaches in United States history, affecting over 76 million Americans and compromising troves of personal information. Class member Cassie Hampe appeals from the award of attorney's fees—$78.75 million of the $350 million settlement fund, as 22.5% with a 9.6–13.1 lodestar multiplier. Given the limited hours spent on the case (the case settling five months after class counsel's appointment), Hampe objected that the fee was a windfall and called for an adjustment of fee methodology to account for the economies of scale evident in settlements over $100 million.

This is an issue of first impression for this Court, and Hampe urges it to adopt the majority position among the circuits to address it. Although the district court addressed Appellant's objection, it also granted class counsels' motion to strike her objection and to revoke pro hac vice admission of her counsel based on actions of another attorney in the same firm in prior cases. Hampe appeals from this order as well.

Hampe requests twenty minutes of oral argument for each side. Given the uniqueness of the issues on appeal, and the issue of first impression on the appropriate fee methodology for $100 million-plus settlements, oral argument would significantly aid the decisional process.

# Corporate Disclosure Statement

Cassie Hampe is an individual.

# Table of Contents

Summary of the Case ........................................................................................i

Corporate Disclosure Statement .......................................................................ii

Jurisdictional Statement ...................................................................................1

Statement of Issues ..........................................................................................2

Statement of the Case ......................................................................................3

    A.   76 million T-Mobile customers have their personal identifying information compromised. ...........................................................................................3

    B.   The court appoints as class counsel the same attorneys who regularly handle the largest data breach cases. ....................................................................4

    C.   T-Mobile settles for $350 million plus the promise that it will spend $150 million on security. .....................................................................................5

    D.   Class counsel move for $78.75 million in attorneys' fees despite just months of work. ...................................................................................................6

    E.   Cassie Hampe objects to the fee request. ................................................7

    F.   Class counsel move to strike the objection and to revoke pro hac vice admission of two of Hampe's attorneys. ....................................................9

    G.   Another data breach occurs the day before the fairness hearing. ............9

    H.   Class counsel file proposed orders, which the clerk deletes from the docket. ...10

    I.   The court grants the motion to strike Hampe's objection and to revoke pro hac vice admission in a near verbatim copy of class counsels' proposed order. ...............10

    J.   The court approves the settlement, awards the full request for fees, and overrules Hampe's fee arguments. ........................................................11

Summary of the Argument ..............................................................................11

Argument .......................................................................................................14

I. As a matter of first impression, the Court should reverse this unprecedented $78 million fee that fails to account for the economies of scale. ........................................14

    A.     The 22.5% fee is a statistical outlier for a $350 Million Settlement...............19

    B.     The majority view adjusts fee methodology to account for the economies of scale with $100 million-plus settlements. ....................................................................21

    C.     This Court should follow the majority approach and prioritize the interests of class members above incentivizing counsel...........................................................30

    D.     The 9.6–13 lodestar multiplier exceeds the outer limit of reasonable multipliers recognized by this Court, which should have alerted the district court to the windfall.............................................................................................................32

    E.     The district court erroneously included $150 million in injunctive relief into its alternative calculation when there was no evidence that this represented the actual benefit to the class................................................................................................34

    F.     Even if the court did not commit methodological error, it abused its discretion in awarding an excessive fee. ........................................................................36

II. The district court committed clear error in striking Hampe's valid objection.......37

III. The district court erred in denying Hampe her choice of counsel and in revoking pro hac vice admission of two of her attorneys..............................................46

Conclusion.................................................................................................................................51

# Table of Authorities

## Cases

*Alexander v. FedEx Ground Package Sys.*, No. 05-cv-00038-EMC, 2016 U.S. Dist. LEXIS 78087 (N.D. Cal. June 15, 2016) ....................................................................................25

*Anderson v. Bessemer City*, 470 U.S. 564 (1985) ............................................................. 2, 38

*Ascentium Cap. LLC v. Littell*, 2021 U.S. Dist. LEXIS 244325 (W.D. Mo. Dec. 22, 2021) ...............................................................................................................................44

*Beaulieu v. Ludeman*, 07-1535, 2008 U.S. Dist. LEXIS 119324 (D. Min. Feb. 7, 2008) .40

*Blessing v. Sirius XM Radio Inc.*, 09CV10035, 2011 U.S. Dist. LEXIS 134628 (S.D.N.Y. Nov. 22, 2011) ...........................................................................................................45

Brown v. Walmart, No. 01L85, 2011 WL 12523823, at *1, *3 (Ill. Cir. Ct. Sept. 14, 2011) ............................................................................................................................40

*Burnett v. ARCCA Inc.*, No. 15-1214, 2016 U.S. Dist. LEXIS 24137 (W.D. La. Feb. 25, 2016) ............................................................................................................................39

*Byrne v. Santa Barbara Hosp. Servs., Inc.*, No. EDCV1700527JGBKKX, 2018 WL 10483678 (C D. Cal. Dec. 14, 2018) ..................................................................................40

*California Scents v. Surco Prods., Inc.*, 406 F.3d 1102 (9th Cir. 2005) ...................................37

*Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d 471 (4th Cir. 2020) ..........................18

*Cheeks v. Belmar*, No. 4:18-CV-2091 CAS, 2019 U.S. Dist. LEXIS 170973 (E.D............2

*Cheeks v. Belmar*, No. 4:18-CV-2091 CAS, 2019 U.S. Dist. LEXIS 170973 (E.D. Mo. 2019) ............................................................................................................................40

*Chryler Corp. v. Carey*, 186 F.3d 1016 (8th Cir. 1999) ........................................................44

*Devlin* v. *Scardelletti*, 536 U.S. 1 (2002) ..................................................................................1

*Emery v. Hunt*, 272 F.3d 1042 (8th Cir. 2001) .....................................................................46

*Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. Appx. 628 (9th Cir. 2020) ..........................34

*Fish v. St. Cloud State Univ.*, 295 F.3d 849 (8th Cir. 2002) .................................................33

*Health Republic Ins. Co. v. United States*, 58 F.th 1365 (Fed. Cir. 2023) .....................passim

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ..........................................................2, 22, 32

Hydroxycut Mktg. & Sales Practice Litig., No. 09md2087 BTM (KSC), 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013)........................................................................41

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2010 WL 1049269 (E.D.N.Y. Mar. 22, 2010) ...................................................................................45

*In re Akorn, Inc. Sec. Litig.*, No.15 C 1944, 2018 U.S. Dist. LEXIS 93874 (N.D. Ill. 2018)..............................................................................................................................18

*In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137 (N.D. Cal. Aug. 17, 2018) .......................................................................15, 21, 35

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...............17, 22, 25

*In re Broiler Chicken Antitrust Litig. End User Consumer*, No. 22-2889, 2023 U.S. App. 22939 (7th Cir. 2023) ................................................................................................14

*In re Capital One Consumer Data SEC Breach Litig.*, No. l:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 213070 (E.D. Va. 2022)..........................................................15, 18, 21

*In re Cendant Corp. Prides Litig.*, 243 F.3d 722 (3d Cir. 2001)..............................................23

*In re Colony Square Co.*, 819 F.2d 272 (11th Cir. 1987) ........................................................38

*In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021).........passim

*In re Equifax Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020) ................................................................. 15, 21

*In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2022 U.S. Dist. LEXIS 20157 (N.D. Cal. 2022) ............................................................................................... 17, 31

*In re Griego*, No.18-52983, 2023 Bankr. LEXIS 1427 (W.D. Tex. Bankr. May 31, 2023) ..............................................................................................................................42

*In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *50 (N.D. Cal. 2015)................................................................................. 16, 20

*In re IndyMac Mortgage-Backed Sec. Litig.*, 94 F. Supp. 3d 517 (S.D.N.Y 2015) .................20

*In re Leapfrog Enters.*, No. C-03-05421, 2008 U.S. Dist. LEXIS 972232 (N.D. Cal. Nov. 21, 2008) ....................................................................................................................51

*In re Life Time Fitness, Inc.,* 847 F.3d 619 (8th Cir. 2017) ...........................................16

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. Nov. 9, 1998)........................................................................................................................23

*In re Optical Disk Drive Prod. Antitrust Litig.*, 804 Fed.Appx. 443 (9th Cir. 2020) ..........48

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020)............passim

*In re Optical Disk,* No. 21 16291, 2022 U.S. App. LEXIS 15571 (9th Cir. 2022) ..........48

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) .........................................................................................................................17

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ........................................22, 30

*In re Southwest Voucher Litigation,* 799 F.3d 701 (7th Cir. 2015)...................................16, 31

*In re Stericycle Sec. Litig.*, 35 F.4th 555 (7th Cir. 2022) ...............................................20

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551 (7th Cir. 2017) .........................................................................................................................50

*In re Synthroid Marketing Litigation*, 325 F.3d 974 (7th Cir. 2003)...............................22, 27

*In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968 (8th Cir. 2018) .............22

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 U.S. Dist. LEXIS 23343 (W.D. Mo. Apr. 20, 2004) ...........................................................................................................50

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922 (8th Cir. 2005)...................16

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 50440, *26 (E.D. La. Mar. 24, 2020) .......................................................................................................20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020)........................................................................................................15, 21

*Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) ............................22, 29

*Johnson v. Trueblood*, 629 F.2d 302 (3d Cir. 1980) ......................................................49

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) .......................................................................37

*Kohlmayer v. Nat'l R.R. Passenger Corp.*, 124 F. Supp. 2d 877 (D.N.J. 2000) ....................49

*LaFond v. Anderson*, No. 07-4066, 2008 U.S. Dist. LEXIS 133874 (D. Minn. Oct. 7, 2008) ..................................................................................................................................48

*Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 463 F.3d 827 (8th Cir. 2006) .........................3

*Martin v. DaimlerChrysler Corp.*, 251 F.3d 691 (8th Cir. 2001) ............................................44

*Matter of Ferguson*, 64 B.R. 553 (Bankr. W.D. Mo. 1986) .....................................................46

*Mauss v. NuVasive, Inc.*, No. 13cv2005 JM (JLB), 2018 U.S. Dist. LEXIS 206387 (S.D. Cal. 2018) ............................................................................................................................18

*McLaughlin v. Chong*, No. 13-cv-0807, 2016 U.S. Dist. LEXIS 42614 (S.D.N.Y. Mar. 29, 2016) ..................................................................................................................................39

*Nelson v. Wal-Mart Stores, Inc.*, No. 05-cv-000134, 2009 U.S. Dist. LEXIS 71253, 2009 WL 2486888 (E.D. Ark. Aug. 12, 2009) ........................................................................32

*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000) ...........................................................37

*Nygaard v. Taylor*, No. 22-2277, 2023 U.S. App. LEXIS 21167 (8th Cir. 2023) ............14

*Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245 (10th Cir. 2005) ..............................................14

*Rawa v. Monsanto Co*, 934 F.3d 862 (8th Cir. 2019 ..............................................................32

*Reyes v. Experian Info. Sols.*, 856 Fed. Appx. 108 (9th Cir. 2021) ......................................25

*See In re Synthroid*, 264 F.3d 712 (7th Cir. 2001) ................................................................27

*Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983) .......................................40

*Seinfeld v. Coker,* 847 A.2d 330 (Del. Ch. 2000) .................................................................31

*Silverman v. Motorola Sold., Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) ...........................27, 28

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .............................................................35

*Swecker v. United States*, No. 4:17-cv-00195, 2017 U.S. Dist. LEXIS 225520 (S.D. Iowa 2017) ..................................................................................................................................41

*Thornburg v. Open Dealer Exch., LLC*, 2018 U.S. Dist. LEXIS 3368, *3 (W.D. Mo. Jan. 9, 2018)..................................................................................................................44

*Timber Ridge Escapes, LLC v. Quality Structures of Ark., LLC*, 6 F.4th 781 (8th Cir. 2021) .......................................................................................................................................14

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ..............................................................14

*United States v. Collins*, 920 F.2d 619 (10th Cir. 1990) ......................................................46

*United States v. Gonzalez-Lopez*, 399 F.3d 924 (8th Cir. 2005) ...................................... 3, 46

*Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002) ........................................................25

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................passim

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th 2010) ............................................37

## Other Authorities

Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Stud. 811 (2010)....................................................................20

Newberg on Class Actions § 15.81 (6th ed. 2023) ............................................................19

*S*

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Studies 248 (2010) ....................................................16

Theodore Eisenberg et. al., Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937 (2017)...................................................................................................... 19, 20

## Rules

Fed. R. Civ. P. 1 .............................................................................................................. 12, 42

Fed. R. Civ. P. 7 ...........................................................................................................2, 12, 39

Fed. R. Civ. P. 12...............................................................................................................passim

Fed. R. Civ. P. 23.....................................................................................................................16

Fed. R. Civ. P. 23(h), 2003 Advisory Committee Notes ..................................................31

W.D. Mo. Local Rule 83.5(h) ........................................................... 3, 46

## Jurisdictional Statement

Jurisdiction of the District Court was invoked pursuant to Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, there are more than 100 proposed Class Members, and minimal diversity exists as Defendant is a citizen of States different from that of at least one Class member. Supplemental jurisdiction was invoked pursuant to 28 U.S.C. § 1367(a) because all claims alleged by Plaintiffs form part of the same case or controversy.

This Court's jurisdiction over the final judgment is invoked pursuant to 28 U.S.C. §1291 because the Order and Judgment Granting Final Approval of Class Action Settlement and Awarding Attorney' Fees, Costs, Expenses, and Service Awards, entered on June 29, 2023,[1] constitutes a final decision of the District Court. On July 31, 2023, within thirty days, Appellant filed a timely Notice of Appeal of that decision and of the Order Granting Plaintiffs' Motion to Strike Objection of Cassie Hampe and to Revoke Admission Pro Hac Vice,[2] also entered on June 29, 2023.[3]

This appeal is from a final judgment that disposes of all parties' claims. Under the Supreme Court's ruling in *Devlin* v. *Scardelletti*, 536 U.S. 1 (2002), because Appellant

---

[1] App.1289, R.Doc.235.

[2] App.1277, R.Doc.234.

[3] App.1763, R.Doc.237.

registered an objection to the award of attorneys' fees in the manner that the District Court specified for objections,[4] she has the ability to pursue this appeal.

## Statement of Issues

1.      As a matter of first impression, and under de novo review, should this Court join the majority view among circuits and require consideration of the economies of scale when addressing attorneys' fees awarded in class action settlements exceeding $100 million?

> *Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1372 (Fed. Cir. 2023)

> *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020)

> *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)

> *Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017)

2.      As a matter of de novo review, did the district court err as a matter of law in striking Appellant's objection under Federal Rule of Civil Procedure 12(f), which applies to pleadings as defined in Federal Rule of Civil Procedure 7(a)?

> Fed. R. Civ. P. 12(f)

> Fed. R. Civ. P. 7(a)

> *Anderson v. Bessemer City*, 470 U.S. 564 (1985)

> *Cheeks v. Belmar*, No. 4:18-CV-2091 CAS, 2019 U.S. Dist. LEXIS 170973 (E.D. Mo. 2019)

---

[4] App.779, R.Doc.189.

3.      Applying the mandated strict scrutiny to disqualification of counsel, did the district court abuse its discretion in revoking pro hac vice admission of attorneys Robert Clore and Mikell West based on prior conduct of a different attorney in the same firm where there is no ethical violation in this case (nor any violation by Clore or West in other cases) and the court's order, adopted nearly verbatim from class counsels' proposed order, is replete with inaccuracies concerning counsel? Did the district court commit legal error in opining counsel will hinder or delay settlement when there are no terms in the settlement impeding settlement distribution based on a challenge only to fees, as opposed to settlement approval, on appeal? Does the failure of the district court's order to consider Appellant's right to counsel of her choice require reversal?

*United States v. Gonzalez-Lopez*, 399 F.3d 924 (8th Cir. 2005)

*Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 463 F.3d 827 (8th Cir. 2006)

W.D. Mo. Local Rule 83.5(h)

## Statement of the Case

### A. 76 million T-Mobile customers have their personal identifying information compromised.

On August 16, 2021, T-Mobile announced a massive data breach.[5] In fact, "T-Mobile suffered one of the largest and most consequential data breaches in U.S. history, compromising the sensitive personal information of" approximately 76 million

---

[5] App.141, R.Doc.128 at 2.

consumers.[6] The information compromised for each person included some combination of names, addresses, zip codes, phone numbers, dates of birth, social security number/tax identification number, and/or other government identification number including driver's license number, account establish date, name of authorized user, phone number, IMSI, MSISDN, PIN, and personal unlock code.[7]

T-Mobile's failure to keep its customers' PII secure has serious ramifications. Given the sensitive nature of the PII stolen in the Data Breach - names, addresses, zip codes, phone numbers, email addresses, dates of birth, Social Security numbers, and driver's license numbers - hackers can commit identity theft, financial fraud, and other identity-related fraud against these 76 million consumers now and into the indefinite future.[8]

### B. The court appoints as class counsel the same attorneys who regularly handle the largest data breach cases.

Shortly after the data breach, multiple putative class action lawsuits were filed against T-Mobile.[9] The lawsuits were transferred by the Judicial Panel on Multidistrict Litigation to United States District Court for the Western District of Missouri, with Judge Brian C. Wimes overseeing the suits.[10]

---

[6] App.140, R.Doc.128 at 1; App.653, R.Doc.158-5 at 5.

[7] App.653, R.Doc.158-5 at 5.

[8] App.198, R.Doc.128 at 59.

[9] App.525, R.Doc. 158-1 at 1.

[10] App.525–26, R.Doc. 158-1 at 1–2.

Over 35 lawyers filed applications to serve as class counsel, some as groups of lawyers and others as individuals.[11] On February 25, 2022, the Court appointed class counsel—the same attorneys responsible for the largest data breach settlements, including with Equifax, Capital One, Home Depot, Anthem, Yahoo! and Target.[12] With a well-established blueprint in place, class counsel prepared a lengthy complaint and served document requests and interrogatories on T-Mobile.[13] No depositions were taken and the case settled before any motion to dismiss, although class counsel did prepare an opposition to a motion to remand.[14]

## C. T-Mobile settles for $350 million plus the promise that it will spend $150 million on security.

The parties settled on July 20, 2022, less than a year from T-Mobile's announcement of the data breach and around five months from class counsels' appointment.[15] The parties agreed to a $350 million common fund.[16] T-Mobile also agreed to maintain an incremental spend commitment of at least $150 million for data security and related technology for 2022 and 2023.[17] The relief offered to the class under

---

[11] *Id.*

[12] App.594, R.Doc.158-3 at 2.

[13] App.729, R.Doc.179-1 at 5.

[14] *Id.*

[15] App.562–63, R.Doc.158-1 at 38.

[16] App.485, R.Doc.158 at 1; App.536, R.Doc.158-1 at 12.

[17] *Id.*

the common fund includes reimbursement for out-of-pocket losses and lost time.[18] But for those who have not yet suffered a loss from the disclosure of their PII, the settlement offers a $25 payment.[19]

Notice issued to the class, and fewer than 2% filed claims,[20] well below the 9% median claims rate for consumer class actions.[21]

### D. Class counsel move for $78.75 million in attorneys' fees despite just months of work.

Class counsel petitioned for attorneys' fees as 22.5% of the $350 million common fund.[22] They also urged the court to include the $150 million expenditure in security into the calculation to make it a 15.75% fee.[23]

At the time of the fee motion, they reported $5,973,534 in lodestar, including $2,327,133.60 of undocumented lodestar from non-lead counsel firms.[24] The records

---

[18] App.589–90, R.Doc.158-2 at 2–3.

[19] *Id.*

[20] App.974, R.Doc.220 at 6; R.Doc.211 at 1.

[21] *See* Alison Frankel, *FTC's comprehensive study finds median consumer class action claims rate is 9%*, Reuters (Sept. 10, 2019), https://www.reuters.com/article/us-otc-claimsrate/ftcs-comprehensive-study-finds-median-consumer-class-action-claims-rate-is-9-idUSKCN1VV2QU.

[22] App.705, R.Doc.179 at 6–7.

[23] *Id.*

[24] App.755, R.Doc.179-1 at 4.

do not even disclose the names of the attorneys who compiled the lodestar.[25] They also disclosed less than $150,000 in expenses.[26]

To reach the requested $78.75 million fee requires a 13.1 multiplier.[27] Class counsel estimated $2.2 million in future lodestar, which still results in a 9.6 multiplier.[28]

### E. Cassie Hampe objects to the fee request.

Cassie Hampe is a member of the settlement class. After receiving the class notice, she contacted Robert Clore, an attorney at the Bandas Law Firm, "who has successfully represented clients objecting to a number of big-ticket MDL settlements before trial courts and on appeal." Dorothy Atkins, *Settling On Zoom: The Rise of Pro Se MDL Objectors*, Law360.com (Dec. 22, 2020). She is the sister-in-law of the principal of the Bandas Law Firm, Christopher Bandas, and knew that the firm evaluated class action settlements.[29]

Hampe was initially concerned about her compromised PII. She spoke with Clore "[a]nd then finding out that lawyer fees are what they are, and I'm getting a cash payment of $25, was very frustrating."[30] Through her attorney Clore and another

---

[25] *Id.*

[26] App.721, R.Doc.179 at 22.

[27] $78,750,000 in requested fees % $5,973,534 total lodestar = 13.18 lodestar multiplier.

[28] App.703, R.Doc.179 at 4; App.744, R.Doc.179-1 at 20. $5,973,534 total lodestar + $2.2M future lodestar = $8,173,534 adjusted lodestar. $78,750,000 in requested fees % $8,173,534 adjusted lodestar = 9.63 lodestar multiplier.

[29] App.915, R.Doc.216-5 at 9, 11; App.919, R.Doc.216-5 at 27–28.

[30] App.896, R.Doc.216 at 10; App.921, R.Doc.216-5 at 33.

attorney at the same firm, Mikell West, plus local counsel Anthoney E. LaCroix, Hampe filed an objection on December 8, 2022, solely to the requested fees.[31] Hampe observed that 22.5% was out of bounds for a settlement as large as $350 million, and called for the court to adjust fee methodology to account for the economies of scale, particularly where a lodestar crosscheck revealed a windfall.[32] Hampe observed that a majority of circuits to address the issue—4 of 6—adjust fee methodology for settlement funds above $100 million.[33] Hampe also complained it would be error for the court to include T-Mobile's $150 million expenditure on security in the calculus.[34]

Attached to Clore's motion for pro hac vice admission, and referenced by West's application, was an injunction entered against the principal of the Bandas Law Firm and the firm itself in connection with Mr. Bandas' past representation of objectors.[35] The injunction essentially requires compliance with the amendments to Rule 23(e)(5)(B) and that the injunction itself be attached to any application for admission.[36] Although Clore was not a party to the action and was not named in it, he did so. And even though West was not employed with the firm at the time the injunction was entered, he did as well.[37]

---

[31] App.779, R.Doc.189 at 1.

[32] App.785–87, RDoc.189 at 1–3.

[33] App.791–93, R.Doc.189 at 7–9.

[34] App.794, R.Doc.189 at 10 n.10.

[35] App.818–22, R.Doc.190-1.

[36] *Id.*

[37] App.824, R.Doc.191 at 2.

Hampe submitted a declaration verifying she filed her objection in good faith for purposes of improving the settlement and would not settle her objection unless approved by the district court.[38] Clore certified to the same effect.[39] The motions for pro hac vice admission were granted on December 8, 2023.[40]

## F. Class counsel move to strike the objection and to revoke pro hac vice admission of two of Hampe's attorneys.

More than a month later, on January 10, 2023, class counsel filed a motion to strike Hampe's objection under Federal Rule of Civil Procedure 12(f) and to revoke the pro hac vice admission of Clore and West.[41] Although they could not claim the objection was frivolous in any respect, class counsel urged the court to strike the objection and revoke Clore's and West's admission based on the prior conduct of Mr. Bandas in other cases even though he is not an attorney in this case.[42]

## G. Another data breach occurs the day before the fairness hearing.

The court held a fairness hearing on January 20, 2023.[43] West argued on behalf of Hampe.[44] The day before the hearing, T-Mobile announced yet another data breach,[45]

---

[38] App.808, R.Doc.189-1.

[39] App.818, R.Doc.190-1 at 2.

[40] R.Doc.190, 191.

[41] App.825, R.Doc.208.

[42] *Id.*

[43] App.978, R.Doc.224.

[44] App.981, R.Doc.224 at 4.

[45] App.982, R.Doc.224 at 5.

this one impacting 37 million customers.[46] This despite T-Mobile's expenditure on additional security measures under the settlement.

### H. Class counsel file proposed orders, which the clerk deletes from the docket.

On February 3, 2023, class counsel filed a proposed order granting the motion to strike and revoke and a proposed order finally approving the settlement and awarding attorneys' fees.[47] The clerk deleted the proposed orders from the docket per administrative procedures requiring proposed orders to be emailed.[48]

### I. The court grants the motion to strike Hampe's objection and to revoke pro hac vice admission in a near verbatim copy of class counsels' proposed order.

On June 29, 2023, the district court granted the motion to strike the objection and revoked pro hac vice admission of both attorneys. The court did not identify any ethical violation by either Clore or West in this case or other cases; but based its ruling on a discussion of prior conduct of Mr. Bandas.[49]

Hampe has moved before this Court to supplement the record with the proposed orders, which she attached to the motion. The order striking the objection and revoking

---

[46] T-Mobile's $150 Million Security Plan Isn't Cutting It, Wired (Jan. 28, 2023), https://www.wired.com/story/tmobile-data-breach-again/ (noting the $150 million expenditure by T-Mobile "clearly hasn't been enough, given the recent incident, which exposed data for roughly a third of the company's US-based customers").

[47] R.Doc.229.

[48] Notice of Docket Modification, Feb. 6, 2023.

[49] App.829–36, R.Doc.208 at 1–8.

pro hac vice admission is a near verbatim copy of class counsels' proposed order, a troubling fact considering these motions are disfavored and require strict judicial scrutiny.[50]

### J. The court approves the settlement, awards the full request for fees, and overrules Hampe's fee arguments.

On the same day, the district court granted final approval of the settlement and awarded the full request of $78.75 million in fees.[51] Despite striking Hampe's objection, the district court overruled it.[52] The sections of the court's order addressing Hampe's arguments concerning application of the economies of scale to megafund settlements are also a near verbatim adoption of those sections from class counsels' proposed order.[53] Hampe filed a notice of appeal from both orders.[54]

### Summary of the Argument

First, this Court should join the majority view among circuits and require consideration of the economies of scale when addressing attorneys' fees awarded in class action settlements exceeding $100 million. The majority approach recognizes that recovery is frequently a product of class size rather than attorney labor and adjusts the fee methodology accordingly. This is an issue of first impression for this Court.

---

[50] *Compare* R.Doc.234 *with* Exhibit 3 to Motion to Supplement.

[51] App.1289, R.Doc.235; App.1335, R.Doc.235 at 47.

[52] App.1329–32, R.Doc.235 at 41–44.

[53] *Compare* R.Doc.235 at 38–45 *with* Exhibit 4 to Motion to Supplement.

[54] App.1763, R.Doc.237.

The fee awarded in this case is a manifestation of the problem, compensating attorneys $78 million for mere months of work in a case in which they had incurred just $150,000 in costs at the time of the motion for attorneys' fees. The fee pays attorneys and paralegals more than $7,000 per hour, and at least 9.6 times their normal hourly rate. The 9.6 lodestar multiplier, many times greater than any prior multiplier for a data breach settlement, far exceeds the outer limit of permissible multipliers recognized by this Court.

This Court should follow the majority approach and reverse the windfall fee, returning tens of millions of dollars that rightfully belong to the class.

Second, the district court erred as a matter of law in striking Appellant's objection under Federal Rule of Civil Procedure 12(f), which applies to pleadings as defined in Federal Rule of Civil Procedure 7(a). An objection to a class action settlement is definitively not within the exhaustive list of pleadings identified in Rule 7(a), and therefore cannot be stricken under Rule 12(f). The district court committed further error of law in striking the objection under Federal Rule of Civil Procedure 1, which does not purport to authorize the striking of objections, and which no court has ever interpreted as such.

Although the court did not purport to strike the objection under its inherent authority to sanction, even if it had, it would have abused its discretion in doing so. There is no evidence of misconduct by Appellant or her attorneys in this case, let alone clear and convincing evidence to support such an extreme sanction. The district court's

order, copied nearly verbatim from class counsels' proposed order that is replete with factual inaccuracies, relies on the conduct of another attorney in earlier cases, which does not justify striking Appellant's meritorious objection. The only evidence in this case is the objector and her attorneys brought an objection, which is indisputably non-frivolous, to improve the settlement for class members by tens of millions of dollars.

Further, the district court's finding that the objection and appeal will delay distribution is false. There are no terms in the settlement impeding distribution when an objector challenges only attorneys' fees, as opposed to settlement approval, on appeal.

Third, applying the mandated strict scrutiny to disqualification of counsel, the district court abuse its discretion in revoking pro hac vice admission of attorneys Robert Clore and Mikell West based on the prior conduct of a different attorney in the same firm. There is no ethical violation in this case (nor any violation by Clore or West in other cases) and the court's order, adopted nearly verbatim from class counsels' proposed order, is replete with inaccuracies. The district court also committed legal error in opining counsel will hinder or delay settlement when there are no terms in the settlement impeding distribution based on a challenge only to fees, as opposed to settlement approval, on appeal. Further, failure of the district court to consider Appellant's right to counsel of her choice requires reversal.

**Argument**

**I. As a matter of first impression, the Court should reverse this unprecedented $78 million fee that fails to account for the economies of scale.**

**Standard of Review:**

Generally, an award of attorneys' fees is reviewed for an abuse of discretion. However, this Court recognizes that methodological determinations and questions of law are reviewed de novo. *See e.g., Timber Ridge Escapes, LLC v. Quality Structures of Ark., LLC*, 6 F.4th 781, 787 (8th Cir. 2021) (recognizing methodology for calculating damages reviewed de novo); *Tussey v. ABB, Inc.*, 746 F.3d 327, 338–39 (8th Cir. 2014) (same); *see also Nygaard v. Taylor*, No. 22-2277, 2023 U.S. App. LEXIS 21167, *7 (8th Cir. 2023) (conclusions of law reviewed de novo); *In re Broiler Chicken Antitrust Litig. End User Consumer*, No. 22-2889, 2023 U.S. App. 22939, *6 (7th Cir. 2023); *accord In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 13 (1st Cir. 2012) ("whether a district court may use a given methodology in structuring an award of attorneys' fees is one of law, and, thus, is subject to de novo review") (citation omitted); *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) ("the district court's legal analysis underpinning the fee award is reviewed *de novo*").

~~~

This record-breaking $78 million award of attorneys' fees, which wrongfully deprives the class of tens of millions of dollars, should be reversed. In a Circuit with a range of reasonable multipliers of up to 5.6, the fee awarded here pays attorneys **9–13**

**times their ordinary hourly rates**, between $7,000–$9,500. This is because the case settled in just months, with class counsel following their blueprint from other enormous, nationwide data breaches.[55]

No court has come close to allowing even half this extreme multiplier in the context of a large data breach class action settlement.[56] Seventy-six million class members already had their personal identifying information compromised in this data breach, with the attendant complications. They should not be saddled with a stand-alone $78 million fee taken from their settlement fund for mere months of work by attorneys.

This type of excessive fee threatens "[p]ublic confidence in the fairness of attorney compensation … [which] is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Intern. Inc,* 1 Cal. 5th 480, 511 (2016) (J. Goodwin Liu, concurring) (citations and quotation omitted); *see Komoroski v. Util. Serv. Private Label,*

---

[55] App.1322–23, R.Doc.234 at 34–35 (court noting that "Class Counsel are collectively responsible for litigating and resolving groundbreaking privacy and data breach cases, including Equifax, Capital One, Home Depot, Anthem, Yahoo!, and Target….")

[56] *See In re Capital One Consumer Data SEC Breach Litig.,* No. l:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 213070, at *13 (E.D. Va. 2022) (1.39 multiplier); *In re Equifax Customer Data Sec. Breach Litig.,* No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209, at *258 (N.D. Ga. Mar. 17, 2020) (2.62 multiplier); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* 2020 U.S. Dist. LEXIS 129939, *145 (N.D. Cal. July 22, 2020) (1.15 multiplier); *In re Anthem, Inc. Data Breach Litig.,* 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137, *119 (N.D. Cal. Aug. 17, 2018) (multiplier slightly over 1.0).

*Inc.*, No. 4:16-CV-00294, 2017 U.S. Dist. LEXIS 187259, *1 (W.D. Mo. Nov. 9, 2017) (noting "cynicism surrounding attorneys' fees in class action cases").

In the Eighth Circuit, courts must act "as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 932 (8th Cir. 2005). "Judicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost." *In re Southwest Voucher Litigation,* 799 F.3d 701, 712 (7th Cir. 2015). Courts, acting in their fiduciary capacity on behalf of the absent class members, must limit class counsel to a reasonable fee under Fed. R. Civ. P. 23(h). *See In re Life Time Fitness, Inc.,* 847 F.3d 619, 622 (8th Cir. 2017).

This Court has never spoken to the approach for awarding fees from settlements over $100 million. Statistically speaking, settlements above $175 million typically net attorneys around 10–12% of the fund. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Studies 248, 265 (2010); *see also In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *50 (N.D. Cal. 2015). That is a reflection of diminishing costs relative to recovery at the upper margins. As has become axiomatic, "it isn't ten times harder to try a $100 million case as it is a $10 million case." *See e.g., In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 933 (9th Cir. 2020).

"[I]n many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of class counsel." *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998)). "[W]hen a class action leads to a megafund settlement … efficiencies in legal services should be passed on not just to counsel, but to the class members, themselves." *In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2022 U.S. Dist. LEXIS 20157, at *46–48 (N.D. Cal. 2022).

Most circuits to confront this issue, the Second, Seventh, Ninth, and Federal Circuits, adjust methodology for the economies of scale. Relying on a misunderstanding of Circuit authority (nearly verbatim from class counsels' proposed order), the district court erroneously "decline[d] to adopt either a megafund or sliding scale approach" or any methodology that accounts for the economies of scale.[57]

This case raises every red flag of a windfall fee from a settlement involving hundreds of millions of dollars and demonstrates why rote application of a rubric does not suffice (particularly in an order drafted by the party petitioning for fees). Notably, the fees are completely untethered to labor and expense. Class counsel reported under $6 million in lodestar[58] at the time of their fee motion yet were awarded $78 million.

---

[57] App.1329, R.Doc.235 at 41.

[58] App.743, R.Doc.179-1 at 19. Even the $5,973,534 was overstated because, as noted *infra*, $2,327,133.60 of the lodestar from non-lead counsel firms was completely

This despite hourly rates of up to $1,275 and a blended hourly rate (including paralegals) of $726/hour.[59] It only took $150,000 in costs and expenses[60] to reach a $350 million settlement, far less than it takes for settlements a fraction of the size.[61]

Rather than attorney labor and expense, the settlement was more a product of the in terrorem effect of 76 million plaintiffs whose personal information was compromised in "one of the largest and most consequential data breaches in U.S. history…."[62] Counsel were able to lean on their work product and results from similarly large-scale data breach settlements which they negotiated, including the $380 million *Equifax* settlement,[63] the $190 million *Capital One* settlement,[64] the $115 million *Anthem* settlement, and the $117.5 million *Yahoo!* settlement, among others.[65] But they were

---

undocumented. App.755, R.Doc.179-1 at 32. All that was provided was total hours and lodestar by 21 different firms. *Id.* There is no way to tell even who actually billed the claimed hours. *Id.*

[59] App.752–54, R.Doc.179-1 at 29-31. $5,973,534 total lodestar % 8,225 hours = $726.26 blended hourly rate.

[60] App.721, R.Doc.179 at 22 (listing expenses at the time of the fee motion as $147,982.55).

[61] *See e.g., Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d 471, 481 (4th Cir. 2020) ($797,397 in costs and expenses for $36 million settlement); *Mauss v. NuVasive, Inc.*, No. 13cv2005 JM (JLB), 2018 U.S. Dist. LEXIS 206387, at *17 (S.D. Cal. 2018) ($745,426.71 in expenses for $7.9 million settlement); *In re Akorn, Inc. Sec. Litig.*, No.15 C 1944, 2018 U.S. Dist. LEXIS 93874, at *12 (N.D. Ill. 2018) ($375,280.60 in costs for $24 million settlement).

[62] App.140, R.Doc.128 at 3.

[63] *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1259 (11th Cir. 2021).

[64] *Capital One*, 2022 U.S. Dist. LEXIS 213070.

[65] App.594, R.Doc.158-3 at 2.

already paid for that work. The savings and efficiencies should have been passed on to the clients, and not just their attorneys.

## A. The 22.5% fee is a statistical outlier for a $350 Million Settlement.

Empirical studies on attorneys' fees agree: "class action fee awards do demonstrate that the percentage awarded to counsel decreases as the size of the fund increases." Newberg on Class Actions § 15.81 (6th ed. 2023). There is a "scaling effect, in the sense that fees as a percentage of the recovery tend to decrease as the size of the recovery increases—an effect that appears to be due to the economies of scale that can sometimes be achieved in very large cases." Theodore Eisenberg et. al., Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937, 940 (2017). In fact, there is an "amazingly regular" relationship between these variables. *Id.*

The district court's order misleadingly recited normative fees falling between 16.6% and 25.5%.[66] Class counsel deliberately targeted smaller settlements rather than referencing settlements closer to $350 million, knowing they would find greater percentages.[67] Had the court looked to figures cited by Hampe for settlements above $175 million, it would have found more precise figures of 10.2% median fees and 12%

---

[66] App.1330, R.Doc.235 at 42 (citing Eisenberg, 92 N.Y.U. L. Rev. at 947, 953). The variation between 16.6% and 25.5% was likely because of "the significantly smaller number of very large cases" in the data. Eisenberg, 92 N.Y.U. L. Rev. at 937.

[67] *Id.* (referencing study's discussion of fees from settlements of $100 million or more); App.1323, R.Doc.235 at 35 (string citing cases involving fees from settlements around $100 million or less with higher percentages).

mean fees. *See* Eisenberg & Miller, 7 J. Empirical Legal Studies at 265. The court's order

attempted to limit this data to a single study;[68] but a subsequent study from the same

authors confirmed (without breaking down fees above $175 million) that "among cases

with recoveries greater than $50 million, ... fees did not increase over the 2003- 2013

period." Eisenberg, 92 N.Y.U. L. Rev. at 942.[69] Therefore, the 10.2% and 12% fees for

$175 million-plus settlements remain in place. Myriad courts have adopted the 10.2%

and 12% figures.[70]

---

[68] App.1332, R.Doc.235 at 44

[69] The court also referenced a study identifying mean and median fees of 17.8% and 19.5% for $500 million settlements. App.1324, R.Doc.235 at 36 (Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Stud. 811 (2010)). This study, however, spanned only two years and unlike the Eisenberg study with a sample size of 68 settlements, included just eight settlements. The Fitzpatrick study was anecdotal at best, and as such has been given lesser weight by courts. *See High-Tech*, 2015 U.S. Dist. LEXIS 118052, at *50. Of course, even under Fitzpatrick's study 22.5% is excessive for a $350 million megafund. App.776, R.Doc.179-2 at 20. A 17.8% fee would have produced a $62.3 million fee, returning $16.45 million to the class; a 19.5% fee would have amounted to a $68.25 million fee, returning $10.5 million in excess fees to the class.

[70] *See e.g., In re Stericycle Sec. Litig.*, 35 F.4th 555, 561–62 (7th Cir. 2022) (noting "median fee award for settlements over $175.5 million was 10.2 percent"); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 50440, *26 (E.D. La. Mar. 24, 2020) ("the data suggests that the mean fee percentage in such cases is 12 percent"); *High-Tech*, 2015 U.S. Dist. LEXIS 118052, at *50 (awarding 9.8% from a $415 million settlement after "accepting [from the Eisenberg study] that the median attorney's fees award in a sample of 68 'megafund' class action settlements over a 16-year period was 10.2%"); *In re IndyMac Mortgage-Backed Sec. Litig.*, 94 F. Supp. 3d 517, 524-525 (S.D.N.Y 2015) (accepting the 10.2% median and 12% mean figures from the Eisenberg study for a $346 million settlement).

The court also believed percentages in other data breach settlements justified 22.5% here.[71] With one exception, all of the settlements were significantly smaller in size, suggesting higher fee percentages.[72] Further, all involved modest multipliers (the highest a 2.6).[73] And *Equifax's* 20.4% from a seemingly comparable $380 million fee was in the context of a settlement that also provided $1 billion in injunctive relief and produced a remarkable 10% claims rate. *Equifax*, 2020 U.S. Dist. LEXIS 118209, at *258 (2.62 multiplier).

A 22.5% fee from a $350 million settlement, particularly in the context of a 9.6–13 multiplier, is statistically out of bounds.

## B. The majority view adjusts fee methodology to account for the economies of scale with $100 million-plus settlements.

Given the amazingly regular phenomena of diminishing percentages for settlements above $100 million, the circuit courts have predictably developed special fee methodologies for these settlements. As with most circuits, the Eighth Circuit utilizes two main approaches to determine a reasonable award of attorneys' fees—the

---

[71] App.1324, R.Doc.235 at 36 n.5.

[72] *See Yahoo!*, 2020 U.S. Dist. LEXIS 129939, *145 (awarding 19.4% from $117.5 million); *Anthem*, 2018 U.S. Dist. LEXIS 140137, at *119 (awarding 27% of $115 million); *Capital One*, 2022 U.S. Dist. LEXIS 213070, at *3 (awarding 28% of $190 million).

[73] *See Capital One*, 2022 U.S. Dist. LEXIS 213070, at *13 (1.39 multiplier); *Yahoo!*, 2020 U.S. Dist. LEXIS 129939, at *117 (multiplier of 1.15); *Equifax*, 2020 U.S. Dist. LEXIS 118209, at *258 (2.62 multiplier); *Anthem*, 2018 U.S. Dist. LEXIS 140137, at *159 (multiplier slightly over 1.0).

lodestar method and the percentage method. *See Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017). Under either approach, "the ultimate reasonableness of the award is evaluated by 'consider[ing] relevant factors from the twelve factors listed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719–20 (5th Cir. 1974).'" *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018).

Six circuits have addressed fee methodology for settlements exceeding $100 million, where the potential for an excessive fee relative to labor is greater and lower percentages are the norm. Four circuits recognize that some accounting for the economies of scale is necessary.[74]

Only two do not.[75] This Court should join the majority, prioritizing the interests of class members over attorneys.

The district court's rationale for siding with the minority was, in part, its mistaken belief (taken from class counsel) that the *Johnson* "multifactor approach" in this Circuit separates it from the majority view.[76] But the court overlooked both the Second and Ninth Circuits' multifactor tests, both of which are comparable to *Johnson*. *See Optical Disk*, 959 F.3d at 930 (*Vizcaino* factors) (citations omitted); *Wal-Mart Stores, Inc. v. Visa*

---

[74] *See Optical Disk*, 959 F.3d at 932–33; *Bluetooth*, 654 F.3d at 942–43; *Wal-Mart*, 396 F.3d at 122; *In re Synthroid Marketing Litigation*, 325 F.3d 974, 980 (7th Cir. 2003); *Health Republic*, 58 F.4th at 1372.

[75] *See Equifax.*, 999 F.3d at 1280; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302–03 (3d Cir. 2005).

[76] App.1327, R.Doc.235 at 39.

*U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (*Goldberger* factors) (citations omitted); *see also Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1372 (Fed. Cir. 2023). These courts adjust their multifactor approaches to the phenomena of $100 million-plus settlements.

**Second Circuit**

In *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, the Second Circuit agreed that 18% of a $3.4 billion settlement would overcompensate the attorneys and affirmed a 6.5% fee instead. 396 F.3d 96, 122 (2d Cir. 2005). After reciting the Circuit's *Goldberger* factors that determine reasonableness, the Court recognized "that economies of scale [can] cause windfalls in common funds cases," necessitating a downward adjustment for larger settlements. *Id.* The Court of Appeals concluded "the sheer size of the instant fund makes a smaller percentage appropriate." *Id.* at 123. "Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent." *Id.* at 122 (quotation omitted).

To further protect against a windfall fee, the Second Circuit turned to the lodestar cross-check, which revealed a 3.5 multiplier, within the range of reasonableness. *Id.* at 123 (citing *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (finding lodestar multiplier of 1.35 to 2.99 common in megafunds of $100 million); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. Nov. 9, 1998) ("multipliers of between 3 and 4.5 have become common")). Had the court allowed

18% instead of 6.5%, the multiplier would have risen above 9, far outside the range of reasonable multipliers.[77]

The Second Circuit dismissed the same argument made by class counsel and adopted by the district court—that a diminishing percentage disincentivizes counsel. According to class counsel and the court, "considering the economies of scale in settlements" may "create perverse incentives, as it may encourage class counsel to pursue quick settlements at sub-optimal levels."[78] That argument is misplaced here because counsel settled in a matter of months and chose not to hold out for greater recovery (such as the $1 billion injunctive relief in *Equifax*). Regardless, the Second Circuit in *Wal-Mart* prioritized "protecting the . . . class from an excessive fee award" over "awarding attorneys' fees based purely on economic incentives." *Wal-Mart*, 396 F.3d at 123. The court scoffed at the notion that a $220 million fee (or 6.5%) could possibly "deter plaintiffs' attorneys from pursuing similar claims[.]" *Id.* As the district court remarked (and the Second Circuit agreed), "[i]f [this fee award] amounts to punishment, I am confident there will be many attempts to self-inflict similar punishment in future cases." *Id.*

---

[77] 18 % 6.5 = 2.7. 3.5 x 2.7 = 9.45.

[78] App.1328, R.Doc.235 at 40.

**Ninth Circuit**

The Ninth Circuit also refuses to treat $100 million-plus settlements like ordinary settlements when awarding fees. The Ninth Circuit generally employs a 25% benchmark, but also requires a multifactor "*Vizcaino*" consideration under the percentage method. *See* e.g., *Reyes v. Experian Info. Sols.*, 856 Fed. Appx. 108, 111 (9th Cir. 2021).

The Ninth Circuit has made "clear that where a megafund recovery is achieved, 'fund size is one relevant circumstance to which courts must refer' in determining the fee award." *Optical Disk,* 959 F.3d at 932–33 (quoting *Vizcaino v. Microsoft*, 290 F.3d 1043, 1047 (9th Cir. 2002). Although there is no bright-line, sliding-scale rule, the courts must grapple with the reality that "in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of class counsel." *Optical Disk*, 959 F.3d at 933.

This is confirmed by reference to lodestar. "[W]here awarding 25% of a 'mega-fund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the bench-mark percentage or employ the lodestar method instead." *Bluetooth*, 654 F.3d at 942–43 (citations omitted); *see Alexander v. FedEx Ground Package Sys.*, No. 05-cv-00038-EMC, 2016 U.S. Dist. LEXIS 78087, *6 (N.D. Cal. June 15, 2016) ("in megafund cases, the lodestar cross-check assumes particular importance"). For example, a district court denied a request for 22% of a $226.5 million settlement where the result would have produced a 4 multiplier, atypically high for

megafund settlements. *Alexander*, 2016 U.S. Dist. LEXIS 78087, at *9 ("a more typical multiplier for megafund case is … 3 or less") (citations omitted). The court reduced fees to 16.4%, resulting in a 3 multiplier, closer to the range of reasonableness for megafunds. *Id.* at *11.

**Federal Circuit**

In *Health Republic Ins. Co. v. United States*, the Federal Circuit vacated an award of $185 million in attorneys' fees from a $3.7 billion class action judgment entered by the Federal Claims Court.[79] 58 F.4th 1365, 1369–72 (Fed. Cir. 2023). The trial court awarded fees as 5% of the common fund, stated it need not perform a lodestar cross-check, but observed that even if it did, an 18–19 multiplier would "not be outside the realm of reasonableness." *Id.* at 1374.[80]

The Federal Circuit reversed "for several reasons, mostly but not exclusively limited to the court's discussion of a lodestar crosscheck."[81] *Id.* at 1372. But, it also found error in the trial court's failure to give "required consideration or weight to pertinent principles and to consensus norms[,]" including reducing fees from large

---

[79] Although *Health Republic* applied the Federal Rules of the Court of Federal Claims, it recognized that the "precedent interpreting the Federal Rules of Civil Procedure applies with equal force…." *Health Republic*, 58 F.4th at 1371.

[80] These types of multipliers are "far outside the evidence relevant norm and so would require exceptional justification." *Id.* at 1376. Instead, the norm for multipliers is "in the range of 1 to 4." *Id.* at 1375 (citations omitted).

[81] The class notice in *Health Republic* specifically advised a lodestar cross-check would be performed; as such, the trial court was bound to do so. *Id.* at 1373–74.

common funds where the amount of time spent on the case reveals the fee as a windfall. *Id.* at 1374–75 (citations omitted). The trial court's fee award noted that when a lawsuit results in a huge award, "even a minute fee percentage can result in a sizeable award to counsel[.]" *Id.* at 1375. However, despite a clearly excessive lodestar multiplier, the trial court erroneously "used that fact as a reason to approve, not reduce" the fee request as it should have. *Id.*

**Seventh Circuit**

Of the four circuit courts to embrace the economies of scale in the context of megafund settlements, the Seventh Circuit is the only one without a multi-factor test for reasonableness. It employs an *ex ante* market-based analysis. *See In re Synthroid*, 264 F.3d 712, 718 (7th Cir. 2001) (*Synthroid I*).

In *Synthroid I*, the Seventh Circuit rejected a megafund cap and discussed the attributes of a diminishing percentage sliding-scale. 264 F.3d at 721. The sliding-scale fee structure has the advantage of fees never going "down for securing a larger kitty," leaving counsel with "an incentive to seek more for their clients." *Synthroid*, 264 F.3d at 721 (citations omitted). The Seventh Circuit followed *Synthroid I* by awarding a declining fee scale in *In re Synthroid Marketing Litigation*, 325 F.3d 974, 980 (7th Cir. 2003) (*Synthroid II*) (awarding 30% of the first $ 10 million, 25% of the next $ 10 million, 22% of the band from $20 million to $46 million, and 15% to all amounts over).

In *Silverman v. Motorola Sols., Inc.*, the Seventh Circuit observed that ex ante agreements "regularly provide for a recovery that increases at a decreasing rate." 739

F.3d 956, 959 (7th Cir. 2013). "Many costs of litigation do not depend on the outcome; it is almost as expensive to conduct discovery in a $100 million case as in a $200 million case. *Id.* "It is accordingly hard to justify awarding counsel as much of the second hundred as of the first." *Id.* A diminishing scale allows attorneys "to recover the principal costs of litigation from the first bands of the award, while allowing the clients to reap more of the benefits at the margin (yet still preserving some incentive for lawyers to strive for these higher awards)." *Id.*

The district court here noted *Silverman* observed that "[d]ata show that 27.5% is well above the norm for cases in which $100 million or more changes hands," but rejected the objection, explaining that "[i]t does not necessarily follow that 27.5% is legally excessive."[82] In fact, the Seventh Circuit did not invalidate the fee because the objector waived error by failing to raise the argument below. *Silverman*, 739 F.3d at 959.

The district court also mistakenly believed that the sliding-scale endorsed in *Synthroid* would produce a comparable fee to the $78 million awarded here.[83] It did so by including the $150 million to be spent by T-Mobile in practice changes in the fund.[84] As discussed *infra*, the district court clearly erred by doing so because, as Hampe objected, $150 million spent by T-Mobile does not equate to a $150 million benefit to the class members considering the changes benefit non-class members as much as class

---

[82] App.1331, R.Doc.235 at 43 (citing *Silverman*, 739 F.3d at 958).

[83] *Id.*

[84] *Id.*

members, T-Mobile had an incentive to apply practice changes regardless, and, in any event, T-Mobile had a subsequent data breach despite the practice changes. Applying the *Synthroid* scale to the $350 million fund would produce a $56.8 million fee and return more than $21 million to the class.[85]

The district court's 22.5% fee with a 9.6–13 plus multiplier would be reversed in the four circuits listed above.

**Third and Eleventh Circuits**

By contrast, the Third and Eleventh Circuits declined to adopt a different analysis for mega-fund settlements. Third Circuit "jurisprudence confirms that it may be appropriate for percentage fees awarded in large recovery cases to be smaller in percentage terms than those with smaller recoveries." *Rite Aid*, 396 F.3d at 302 (citation omitted). Nevertheless, the Third Circuit declined to impose a formalistic rule that the court must "apply a declining percentage reduction in every settlement involving a sizable fund." *Id.* at 303.

The Eleventh Circuit declined to make consideration of the economies of scale part of the fee analysis for megafund settlements. *See Equifax*, 999 F.3d at 1280. It was enough for the Court that the *Johnson* factors do not "explicitly address the economies of scale in megafund case[s]." *Id.*

---

[85] 30% of $10 million = $3 million. 25% of the next $10 million = $2.5 million. 22% of the band from $20 million to $46 million = $5.72 million. 15% of the amounts above $46 million ($350 million - $46 million = $304 million x .15=$45.6 million). $3 million + $2.5 million + $5.72 million + $45.6 million = $56.82 million.

Both the district court in this case, and the circuit courts in the minority, questioned the wisdom of an economies of scale consideration, arguing it might discourage counsel from taking risky cases or fighting for every extra dollar and encourage quick settlements at sub-optimal levels.[86] There is no evidence that reduced fees at higher margins deters attorneys from pursuing large-scale litigation or induces early settlements. No fewer than 35 firms competed for the right to be counsel in this case. And if class counsel settled this case in a matter of months because they believed they would recover a diminished percentage, they certainly failed to acknowledge as much.

Regardless, as the Second Circuit recognized, it is more important to protect class members from windfall fees than making sure counsel are properly incentivized. *See Wal-Mart*, 396 F.3d at 123. "[A]warding attorneys' fees based purely on economic incentives" strikes the wrong balance between lawyers and the class. *Id.*

## C. This Court should follow the majority approach and prioritize the interests of class members above incentivizing counsel.

The ultimate consideration for any court is reasonableness. Fed. R. Civ. P. 23(h). This Court should follow the majority position among the circuit courts and adjust fees considering the economies of scale.

---

[86] App.1327–28, R.Doc.235 at 39-40 (citing *Equifax*, 999 F.3d at 1280; *Rite Aid*, 396 F.3d at 302 n.12).

This neither "undercuts the virtues of the percentage approach" nor "fails to recognize that such cases are inherently riskier[,]" as class counsel wrote and the court accepted in its order.[87] The $37.5 million fee proposed by Hampe more than adequately compensates counsel for that risk, still producing a lodestar multiplier above 4 even with anticipated lodestar included, returning $41,250,000 to the class members to address their damages from the enormous data breach.

While large fees incentivize meritorious suits and efficient litigation, "a point exists at which those incentives are produced, and anything above that point is a windfall . . . serving no other purpose than to siphon money away" from beneficiaries and enrich plaintiffs' lawyers. *Seinfeld v. Coker*, 847 A.2d 330, 333-34 (Del. Ch. 2000). The "efficiencies in legal services should be passed on not just to counsel, but to the class members, themselves." *Glumetza*, 2022 U.S. Dist. LEXIS 20157, at *40.

Ordinarily, legal fees are driven by the market. The problem in class actions is that when the case settles and fees are calculated, no market forces limit price gouging by class counsel. Indeed, T-Mobile agreed not to oppose any attorneys' fees up to 30% of the Settlement Fund.[88]

Judicial scrutiny combats this lack of market pressure. *See Southwest Voucher*, 799 F.3d at 711; *see also* Fed. R. Civ. P. 23(h), 2003 Advisory Committee Notes ("Active

---

[87] App.1328, R.Doc.235 at 40.

[88] App.555, R.Doc.158-1 at 35.

judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process"). The best way to do this is by reference to the collective wisdom of comparable settlement fee awards, which in this case show awards between 10%–12% of a $350 million fund. This amount can then be compared against the lodestar to ensure fairness in light of the hours expended on the case.

Regardless of the approach, each of the majority position circuits would vacate this 22.5% fee with a 9–13-plus multiplier, resulting in tens of millions more to address the class members' damages.

### D. The 9.6–13 lodestar multiplier exceeds the outer limit of reasonable multipliers recognized by this Court, which should have alerted the district court to the windfall.

The court's lodestar cross-check, taken nearly verbatim from class counsels' proposed order, is deeply flawed and demonstrates the extent to which it disregarded egregious attorney overcompensation.

Although the Eighth Circuit has upheld a 5.3 multiplier, it acknowledged it as high. *See Rawa v. Monsanto Co*, 934 F.3d 862, 870 (8th Cir. 2019). In fact, elsewhere, it has referred to the range of multipliers in the Eighth Circuit "of up to 5.6...." *Huyer*, 849 F.3d at 399- 400 (citing *Nelson v. Wal-Mart Stores, Inc.*, No. 05-cv-000134, 2009 U.S. Dist. LEXIS 71253, 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009)) (approving multiplier of 2.5 and citing cases within the Eighth Circuit approving multipliers of up to 5.6).

The order approving a 9.6 multiplier flouts this Court's discussion of the outer range of reasonable multipliers. *See Huyer*, 849 F.3d at 399–400. Further, the smattering of cases cited from other jurisdictions are inapposite outliers.[89] "[T]he the existence of outliers does not negate the existence of a norm." *Health Republic*, 58 F.4th at 1376.

Of course, the order does not identify a data breach settlement allowing anything approaching a 9.6 multiplier. The highest lodestar multiplier in any of the comparably large *Equifax*, *Capital One*, *Yahoo!*, and *Anthem* settlements was 2.6.

Additionally, the 9.6 multiplier is almost certainly understated. $2,327,133.60 of the $5,973,534 total lodestar came from non-lead firms, and there is no breakdown by individual biller for this lodestar.[90] The material does not even name individuals at the non-lead firms who billed the claimed hours. All that was provided was total hours and lodestar by 21 different firms. *Id.* And there is no declaration from any individual from those respective firms to substantiate the reported $2.3 million lodestar. *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) ("The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates").

---

[89] *Id.*

[90] App.755, R.Doc.179-1 at 32.

Removing non-lead counsels' lodestar leaves a 21.5 multiplier (excluding future, anticipated lodestar).[91] Or a 13.5 multiplier if future lodestar is included.[92] Reducing fees to $37.5 million, as suggested by Hampe, would produce a 4.5 multiplier (including future, anticipated lodestar).[93]

### E. The district court erroneously included $150 million in injunctive relief into its alternative calculation when there was no evidence that this represented the actual benefit to the class.

The district court abused its discretion in including the $150 million expenditure on data security in the settlement fund for purposes of calculating a percentage. *See Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. Appx. 628, 634 (9th Cir. 2020) (under *Staton* and *Roes*, the district court abused its discretion by attributing *any* value to the class of the injunctive relief, much less the face value claimed"). The court did not merely consider this injunctive relief for purposes of determining an appropriate percentage; rather it added the $150 million to the settlement fund, to arrive at an alternative $500 million fund for purposes of calculating a percentage award—"15.75% of the class benefits."[94]

---

[91] $5,973,534 lodestar - $2,327,133.60 non-lead lodestar = $3,646,400.40 lodestar. $78,750,000 % $3,646,400.40 = 21.5 multiplier

[92] $5,973,534 + $2.2M future lodestar (App.744, R.Doc.179-1 at 21 ¶54) - = $8,173,534 adjusted lodestar - $2,327,133.60 = $5,816,400.40. $78,750,000 % $5,816,400.40 = 13.5 multiplier.

[93] $37,500,000 % $8,173,534 = 4.5

[94] App.1324, 1330, R.Doc.235 at 36, 42 ("[i]t is appropriate to apply the percentage method to the entire $500 million class benefit").

"[O]nly in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Where "the true cost of the injunction to the defendant" and more importantly, "the true benefit to the class … is a matter of speculation[,]" the Ninth Circuit had "no difficulty … deciding that the district court abused its discretion in counting the parties' estimated value of the relief towards the putative fund." *Id.* at 973.

Citing *Anthem*, the court indicated that courts "routinely consider" this kind of benefit.[95] *Anthem* indeed allowed for consideration of injunctive relief in determining what percentage to award; but the court made clear it cannot be included as part of the value of the common fund for purposes of calculating fees unless its value has been "accurately ascertained." *Anthem*, 2018 U.S. Dis. LEXIS 140137, at *92 (quoting *Staton*, 327 F.3d at 974). Additionally, it would be difficult to separate which portion of the spending the defendant "would have spent anyway in the aftermath of the data breach at issue." *Id.* The value of the injunctive relief could not be accurately ascertained, and thus could not be included in the sum. *Id.*

---

[95] App.1330, R.Doc.235 at 42.

**F. Even if the court did not commit methodological error, it abused its discretion in awarding an excessive fee.**

Additionally, the $78.75 million fee represents an abuse of discretion when considering the *Johnson* factors. *See Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 719-20 (5th Cir. 1974). Factor (1), the time and labor required, cuts decidedly against a $78.75 million fee, which compensates class counsel for months, not years. The number of hours reported requires paying class counsel and their paralegals either 9.6 or 13.1 times their already high $726 blended hourly rate.

So does factor (2), the novelty and difficulty of the questions, considering the same class counsel followed a well-established blueprint for success was already established in *Equifax*, *Capital One*, and other data breach settlements.

Factors (5) the customary fee, (8) the amount involved and the results obtained, and (11) awards in similar cases do not support the proposed fee. Class counsels' requested fee is unprecedented. No court has awarded attorneys 13.1 or 9.6 times their (already high) hourly rates for a data breach megafund settlement. The court's comparison with *Equifax* settlement (which again, allowed 20% fees with a 2.6 lodestar multiplier) is misguided. While the settlement funds are comparable despite a much larger class in *Equifax*, the *Equifax* settlement required the company "to spend a minimum of $1 billion on data security over five years." *Equifax,* 999 F.3d at 1259. That is more than six times the $150 million expenditure for just two years here.

Finally, factors (6) whether the fee is fixed or contingent, and (10) the "undesirability" of the case, weigh heavily against an excessive $78.75 million fee. The case was highly desirable and there was minimal risk given the breadth and severity of the data breach and prior settlements secured by the same class counsel. Attorneys lined up at the courthouse to assume that risk.

## II. The district court committed clear error in striking Hampe's valid objection.

### Standard of Review:

Courts generally review a decision to strike under Rule 12(f) for an abuse of discretion. *See Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). However, when the question is a purely legal issue such as whether "Rule 12(f) authorizes the district court to strike such matter at all[,]" the legal issue is reviewed de novo. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th 2010) (citing *California Scents v. Surco Prods., Inc.*, 406 F.3d 1102, 1105 (9th Cir. 2005). As this Court has explained, "[i]nterpreting the Federal Rules of Civil Procedure presents a question of law subject to de novo review." *Keil v. Lopez*, 862 F.3d 685, 703-704 (8th Cir. 2017).

~~~

The district court struck Hampe's objection based on the prior conduct of an attorney, not in this case, who is not Hampe's counsel of record. Class counsels' proposed order striking the objection, adopted nearly verbatim by the district court, is a microcosm of the reasons courts have admonished against ghostwriting of judicial orders. "When such a practice is permitted, the drafting party has an 'overwhelming'

'temptation to overreach and exaggerate.'" *Equifax*, 999 F.3d at 1268 (quoting *In re Colony Square Co.*, 819 F.2d 272, 274–75 (11th Cir. 1987)); *see also Anderson v. Bessemer City*, 470 U.S. 564, 572 (1985).

Class counsel succumbed to that temptation: the order is replete with half-truths and inaccuracies that the court ostensibly failed to vet. For example, the order references a $900,000 award of attorneys' fee in *Syngenta* to the Bandas Law Firm as evidence that the firm "continues to use Rule 23 — despite its amendments — to trade dismissal of an appeal premised on the cost of delay to the settlement class for its own remuneration."[96] Missing from the discussion is those fees were approved by Judge Lungstrum of the District of Kansas in connection with a $3 million benefit secured by the firm for the class that it would not have been entitled to otherwise, as well as meaningful nonmonetary benefits, all of which the court found in the best interests of the class. *See In re Syngenta MIR 162 Corn Litig.*, 2:14-md-02591-JWL-JPO, Dkt. 4318, at 7-10 (D. Kan. Jan. 3, 2020); Dkt. 4278 at 3, 5–6, Dkt. 4307, Dkt. 4308.[97]

---

[96] App.1284–85, R.Doc.234 at 8–9.

[97] Additionally, the order references a magistrate judge denying attorney Robert Clore's pro hac vice admission in the District of New Jersey based on prior conduct of Mr. Bandas. App.1279–80, R.Doc. 234 at 3–4. It omits that the District of New Jersey, after a more thorough admissions process, subsequently admitted Clore to practice after reviewing the same material, and the district judge ultimately did not reach the question because Clore's admission rendered it moot. *See In re Valeant Pharmaceuticals International Securities Litig.*, 3:15-cv-07658-MAS-RLS, Dkt. 850 (D.N.J. Sept. 21, 2021).

The order shows an absence of judicial skepticism in considering a motion to strike, which is an extreme measure "viewed with disfavor[.]" *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). This critical review is necessary because parties may use the motion as a tactical weapon or to harass.

Class counsels' motion did both. It disparaged Hampe and her counsel and eliminated the only objection that cogently explained why this record-breaking fee should be rejected in the Eighth Circuit.[98] Regardless, the two articulated legal bases for striking, Fed. R. Civ. P. 12(f) and Rule 1, do not support striking the objection as a matter of law.[99]

### Rule 12(f)

Only *pleadings* are subject to a motion to strike. Fed. R. Civ. P. 12(f). Rule 7(a) articulates a finite list of what constitutes a pleading.[100] *See McLaughlin v. Chong*, No. 13-cv-0807, 2016 U.S. Dist. LEXIS 42614, *6 (S.D.N.Y. Mar. 29, 2016) ("Rule 7(a) contains an exhaustive list of what constitutes a pleading"); *Burnett v. ARCCA Inc.*, No. 15-1214, 2016 U.S. Dist. LEXIS 24137, *1 (W.D. La. Feb. 25, 2016) (noting the list of

---

[98] App.888–89, R.Doc.216 at 6-7, App.911–12, R.Doc.216-4 at 1-2.

[99] App.1285–86; R.Doc.234 at 9-10.

[100] Rule 7(a) provides: "Pleadings. Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

what a pleading is under Rule 7(a) is an "exhaustive list"). Objections to class action settlements are not on the list.

Thus, "[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." *Cheeks v. Belmar*, No. 4:18-CV-2091 CAS, 2019 U.S. Dist. LEXIS 170973, at *2 (E.D. Mo. 2019) (quotation omitted); *Beaulieu v. Ludeman*, 07-1535, 2008 U.S. Dist. LEXIS 119324, *82 (D. Min. Feb. 7, 2008) (motions not listed in Rule 7(a) as a pleading not subject to being struck under Rule 12(f)); *see also Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) ("Under the express language of the rule, only pleadings are subject to motions to strike.")

The court's order suggests it had discretion to strike under Rule 12(f) because objections are "the only 'pleadings' filed by an objector."[101] But this conclusion conflicts with the plain language of the Rule. No court has ever found that an objection is a pleading for purposes of Rule 12(f).

The three cases cited by the court are inapposite. A court in the Central District of California struck an objection to a class action settlement under Rule 12(f) without any discussion of whether an objection is a pleading. *Byrne v. Santa Barbara Hosp. Servs., Inc.*, No. EDCV1700527JGBKKX, 2018 WL 10483678, at *20 (C D. Cal. Dec. 14, 2018). The issue was ostensibly not raised before the district court. The *Brown v. Walmart* opinion from an Illinois Circuit Court is no authority for whether an objection can be

---

[101] App.1286, R.Doc.234 at 10.

struck under Federal Rule of Civil Procedure 12(f). No. 01L85, 2011 WL 12523823, at *1, *3 (Ill. Cir. Ct. Sept. 14, 2011). And, the *Hydroxycut Mktg. & Sales Practice Litig.* opinion from the Southern District of California struck an objection for lack of standing[102] without mentioning Rule 12(f). No. 09md2087 BTM (KSC), 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013).

Even if Rule 12(f) were applicable to objections, the Rule provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court failed to identify any redundant, immaterial, impertinent, or scandalous matter in Hampe's objection. Rule 12(f)'s "scandalous matter" is "a very narrow classification of allegation." *Swecker v. United States*, No. 4:17-cv-00195, 2017 U.S. Dist. LEXIS 225520, at *11 (S.D. Iowa 2017). "Statements are to be stricken as 'scandalous' only when they contain allegations 'that unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the Court.'" *Id.* (quotations omitted). Hampe's objection does not include any scandalous statements. The district court committed legal error in striking Hampe's objection under Rule 12(f).

---

[102] There is no dispute Hampe has standing. She established her membership in the class (App.808-13, R.Doc.189-1 at 2-7), complied with all procedural requirements for objecting, provided a 19-page, thoroughly detailed objection, gave notice of her intent to appear at the fairness hearing through counsel, and even appeared on short notice for a two-hour deposition that confirmed her standing in the class and further substantiated her objection. There was no legitimate basis for striking Ms. Hampe's valid objection, which paradoxically the Court struck and overruled.

**Rule 1**

The court committed further legal error in assigning Rule 1 as a legal basis for striking the objection.[103] Undersigned counsel was unable to find a single opinion purporting to strike an objection to a class action settlement, or any pleading or document for that matter, under Fed. R. Civ. P. 1. Counsel is not alone. Chief United States Bankruptcy Judge Craig A. Gargotta remarked that "[a]fter a thorough search, the Court was unable to find a single case in any United States jurisdiction deciding a motion to strike a pleading based on Rule 1." *In re Griego*, No.18-52983, 2023 Bankr. LEXIS 1427, *6-7 (W.D. Tex. Bankr. May 31, 2023). "Rule 1 is an insufficient legal basis to request that a pleading be stricken based on failure to adhere to the 'speedy' adjudication standard in Rule 1." *Id.*

Even if Rule 1 were a valid legal basis for striking an objection, Hampe has done nothing to interfere with the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. She filed a timely objection, appeared for a deposition as ordered by the court, and appeared through counsel on the date of the fairness hearing.

To the extent the district court believed that Hampe's objection was meant to delay implementation of the settlement through an appeal, the court was mistaken on the facts. There are no terms in the settlement impeding distribution when an objector challenges only attorneys' fees, as opposed to settlement approval, on appeal as Hampe

---

[103] App.1285, R.Doc.234 at 9.

has done here.[104] Indeed, Appellant encourages the parties to distribute funds under the settlement immediately if they have not done so already. The necessary reduction in excess fees can be delivered to the class through a secondary distribution.

In any event, Hampe testified her "objection [was] brought in good faith and for the purpose of improving the settlement."[105] Further, she stipulated that she "will not settle [her] objection without approval from [the district] [c]ourt."[106] And of course, the district court could only approve a settlement of the objection that conveyed a material benefit to the class which the court found was in its best interests.

Because the district court's order striking Hampe's objection is legally untenable under either Rule 12(f) or Rule 1, it must be reversed.

---

[104] The settlement provides that its effective date occurs after the "Final Approval Order and Judgment has become final because … if any appeal … has been filed, the Final Approval Order and judgment is affirmed without material change, or the appeal is dismissed or otherwise disposed of, and no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, and requests for rehearing or other review has expired." App.540–41, R.Doc.158-1 at 20-21 (¶¶7.1, 7.1.5). Critically, "Final Approval Order and Judgment" does not include an award of attorneys' fees. App.530, R.Doc.158-1 at 6 (¶2.20). In discussing attorneys' fees, paragraph 19.3 provides, "[t]he Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any Attorneys' Fees or Expenses. . . . No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of Attorneys' Fees or Expenses, or the amount thereof, shall be grounds for cancellation or termination of this Agreement." App.555, R.Doc.158-1 at 31. Since Hampe's appeal only challenges attorneys' fees, it does not delay implementation of the settlement or its effective date.

[105] App.808, R.Doc.189-1 at 2. Her counsel also certified the objection was brought in good faith for purposes of improving the settlement. App.818, R.Doc.190-1 at 4.

[106] *Id.*

The district court did not indicate it was striking Hampe's objection as a sua sponte sanction under its inherent authority, and this Court should not review the order on this basis. Nevertheless, if it does, the Court should still reverse because inherent sanctions would be an abuse of discretion.

As a threshold matter, the Court's "review of sanctions imposed by the district court is more focused when the drastic sanction of dismissal or default is imposed." *Chryler Corp. v. Carey*, 186 F.3d 1016, 1020–21 (8th Cir. 1999). A court can only "sanction a party under its inherent authority if it finds by … clear and convincing evidence that the party acted in bad faith." *Ascentium Cap. LLC v. Littell*, 2021 U.S. Dist. LEXIS 244325, *23 (W.D. Mo. Dec. 22, 2021) (citing *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694-95 (8th Cir. 2001)); *see Thornburg v. Open Dealer Exch., LLC*, 2018 U.S. Dist. LEXIS 3368, *3 (W.D. Mo. Jan. 9, 2018). The district court did not find clear and convincing evidence of bad faith. In fact, the court referenced no evidence of bad faith taken in *this* case. The claimed bad faith was conduct from other cases involving Mr. Bandas, which the court used to infer that he must be doing something similar in this case. That and the McCarthyesque innuendo that Hampe's husband had been criticized as a professional objector years earlier. Hampe herself has only objected to a class action settlement in one prior case,[107] and that court never suggested her objection was

---

[107] App.898, R.Doc.216 at 16.

improper or brought for an improper purpose. *See generally Bateman v. American Multi-Cinema, Inc.*, Case No. 2:07-cv-00171-JH).

That is not clear and convincing evidence of bad faith in *this* case. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2010 WL 1049269, at *3 (E.D.N.Y. Mar. 22, 2010) (concluding that evidence of "bad faith or vexatious conduct" in other similar litigations was insufficient to support a finding of such conduct in instant litigation); *see also Blessing v. Sirius XM Radio Inc.*, 09CV10035, 2011 U.S. Dist. LEXIS 134628, *1 (S.D.N.Y. Nov. 22, 2011) ("[m]erely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough").

The objection is meritorious, not frivolous, and stands to improve the settlement by tens of millions of dollars. The court's striking of the objection cannot be upheld under the district court's inherent authority, which in any event, the district court did not reference in striking the objection.[108]

---

[108] In the unlikely event this Court does not reverse the striking of Hampe's objection, it should nevertheless consider, as a guardian for the absent class members, the impropriety of the excessive $78 million fee.

**III. The district court erred in denying Hampe her choice of counsel and in revoking pro hac vice admission of two of her attorneys.**

   **Standard of Review:**

   The district court indicated it had "discretion to reject or revoke pro hac vice status."[109] However, "even under the abuse of discretion standard, a district court's rulings on issues of law are reviewed de novo." *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001). If the district court bases a decision to deny pro hac vice on conduct occurring outside its presence, the decision is not entitled to deference but instead is reviewed de novo. *See United States v. Gonzalez-Lopez*, 399 F.3d 924, 929 (8th Cir. 2005) (citing *United States v. Collins*, 920 F.2d 619, 628 (10th Cir. 1990)) (revocation of attorney's admission pro hac vice reviewed de novo where attorney was disqualified based on pleadings, not conduct in open court).

~~~

   The's district court's near verbatim adoption of class counsels' proposed order revoking pro hac vice admission of two of Hampe's attorneys, Robert Clore and Mikell West,[110] requires reversal. Class counsels' motion to strike required strict judicial scrutiny. In adopting their proposed order nearly verbatim, none was applied. The

---

[109] App.838, R.Doc.208 at 14 (citing *Matter of Ferguson*, 64 B.R. 553, 554-55 (Bankr. W.D. Mo. 1986).

[110] Western District of Missouri Local Rule 83.5(h) governs pro hac vice admission. Attorneys Clore and West complied with its provisions. App.814–24, R.Doc.190, R.Doc.190-1, R.Doc.191.

court's order made no mention of Hampe's right to the choice of her counsel, a mandatory consideration. And its articulated basis for denying admission—that the attorneys' firm will hinder the settlement process and discourage just, speedy, and inexpensive determination of the action—is predicated on the falsehood that Hampe's appeal will delay settlement distribution. Under the plain terms of the settlement, because Hampe challenges only fees, it will not.[111]

This Court has not spoken to the standard for revocation of pro hac vice admission. It has, however, addressed the denial of admission pro hac vice in the context of a criminal case in *Gonzalez-Lopez*, 399 F.3d at 928-932.

In general, the "the district court *must* carefully balance the defendant's right to be represented by the counsel of his choice against the interest in 'the orderly administration of justice.'" *Id.* at 929 (quotation omitted) (emphasis added). The court may "consider the effect of the attorney's past actions (especially ethical violations) on the administration of justice within the court." *Id.* (citation omitted). Reversal was required in *Gonzalez-Lopez* where "there is no mention of the effect of the denial on" the defendant's "right to representation by counsel of his choice." *Id.* at 932.

Further, to the extent the revocation amounts to disqualification of counsel, the law requires "particularly strict scrutiny[,]" which is necessary "[b]ecause of the potential for abuse by opposing counsel[.]" *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 463 F.3d

---

[111] *Supra* n. 104.

827, 833 (8th Cir. 2006) (quoting *Harker v. Commissioner*, 82 F.3d 806, 808 (8th Cir. 1996)).

This Court should reverse because the district court's order fails to articulate any consideration of Hampe's choice of counsel. *See Gonzalez-Lopez*, 399 F.3d at 929, 932. While the order discusses the past conduct of another attorney relative to the administration of justice, it fails to mention Hampe's choice of counsel, Robert Clore and Mikell West, who have secured nearly $30 million in benefits for settlement classes through their representation of objecting class members since joining the firm in 2016 and 2020, respectively.[112]

The revocation is also improper because it is not based on impropriety or ethical violation by either attorney in this case or a prior case. There was no finding of impropriety or ethical violation in this case. *See LaFond v. Anderson*, No. 07-4066, 2008 U.S. Dist. LEXIS 133874 (D. Minn. Oct. 7, 2008) ("At a minimum, a violation of disciplinary standard applicable to members of the bar of the court would justify revocation of pro hac vice status") (quoting *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d

---

[112] *See e.g., In re Optical Disk,* No. 21 16291, 2022 U.S. App. LEXIS 15571, at *7 (9th Cir. 2022) (securing vacatur of fee award that resulted in $4.38 million class benefit); *Optical Disk*, 959 F.3d 922 and *In re Optical Disk Drive Prod. Antitrust Litig.*, 804 Fed.Appx. 443 (9th Cir. 2020) (prevailing in appeal with vacatur of $52.8 million fee award that resulted in $21.8 million class benefit); *In re Syngenta*, 2:14-MD-02591, Dkt. 4318 at 8-–9; 4278 at 3, 6- 7 (D. Kan. Jan. 6, 2020) (securing a $3 million monetary benefit for a settlement class of com farmers and supplying nonmonetary benefits to the claims process); *see* App. 788–89, R.Doc.189 at 10-11; App.817–18, R.Doc.190-1 at 3-4.

Cir. 1980)). And there was no finding of an ethical violation by either attorney in prior cases.[113]

Instead, the court revoked based on its conclusion that "the Bandas Firm's participation in this MDL is likely to improperly hinder the settlement process and is antithetical to the just, speedy, and inexpensive determination of this action."[114] This was based on the court's concern that, given the conduct of another attorney in the firm from years past, an appeal would be filed to delay implementation of the settlement for the sole purpose of extracting attorneys' fees. But Hampe's appeal cannot delay the settlement because she only challenged attorneys' fees and there are no settlement terms

---

[113] West is admitted in courts across the nation and has never been denied admission or had his admission revoked. Clore was denied pro hac vice admission in the District of New Jersey based on judicial criticisms of Mr. Bandas and an omission from a 2019 list of all objections made by the Bandas Law Firm even though Clore started working for the firm in 2016 and the omitted objection was filed in 2012 and no longer part of the firm's records. *See Cole v. NIBCO, Inc.*, No. 3:13-cv-07871, No. 3-13-cv-07871, Doc. 223 (D.N.J. Apr. 5, 2019). Clore's pro hac vice admission was subsequently denied by a magistrate judge in the District of New Jersey again, this time based solely on Mr. Bandas' prior conduct in *In re Valeant Pharmaceuticals International Securities Litig.*, 3:15-cv-07658-MAS-RLS, Doc. 642 (D.N.J. Dec. 21, 2020). However, the District of New Jersey, after a more thorough admissions process, subsequently admitted Clore to practice after reviewing the same material, and the district judge ultimately did not reach the appeal of the magistrate judge's denial of pro hac vice admission because Clore's admission rendered it moot. Doc. 850 (D.N.J. Sept. 21, 2021). Clore is admitted and in good standing in courts across the nation and has since been admitted pro hac vice before numerous courts.

[114] App.1288, R.Doc.234 at 12 (citing Fed. R. Civ. P. 1; *Kohlmayer v. Nat'l R.R. Passenger Corp.*, 124 F. Supp. 2d 877, 882 (D.N.J. 2000)). Notably, the attorney in *Kohlmayer* was denied pro hac vice admission based on the attorney's past behaviors hindering litigation, not *another* attorney's past behaviors.

impeding distribution in that instance.[115] Otherwise, the court's order, entered after the filing of all papers by Hampe (other than the notice of appeal) and after the fairness hearing, does not identify how Clore or West hindered the settlement process or deterred speedy, inexpensive determination of the litigation in any respect. Clore "certifie[d] to the Court that the objection of Cassie Hampe is filed for the purpose of improving the settlement and will not be settled without approval from [the district] [c]ourt."[116] Any settlement of the objection approved by the district court would necessarily require a benefit to the class that the court would have to determine was in its best interests.

The truth is counsel sought to advocate on behalf of Hampe's meritorious objection to return excess funds from a windfall award of fees to the class. The order revoking pro hac vice only serves to disparage Clore and West, while harming class action jurisprudence by discouraging valid objections to unfair fees. *See In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 556 (7th Cir. 2017) ("objectors play an essential role in judicial review of proposed settlements of class actions"); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 U.S. Dist. LEXIS 23343, *9 (W.D. Mo. Apr. 20, 2004) ("it is well settled that objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable

---

[115] *Supra* n. 104.

[116] App.818, R.Doc.190-1 at 4. Amended Rule 23(e)(5)(B) requires district court approval for any payment in connection with an objection, even on appeal.

settlements"); *In re Leapfrog Enters.*, No. C-03-05421, 2008 U.S. Dist. LEXIS 972232, *7 (N.D. Cal. Nov. 21, 2008) ("[t]he role of the objector is particularly important in the evaluation of the reasonableness of attorneys' fee requests by class counsel"). The revocation of Hampe's attorneys' pro hac vice admission should be reversed.

## Conclusion

Appellant respectfully requests that the Court reverse the district court's award of attorneys' fees and reverse the district court's order striking her objection and revoking the pro hac vice admission of her counsel Robert Clore and Mikell West.

Dated:  September 22, 2023                Respectfully submitted,

                        /s/ Robert Clore
                        Robert Clore
                        BANDAS LAW FIRM, P.C.
                        802 N. Carancahua St., Suite 1400
                        Corpus Christi, Texas 78401
                        Tel: (361) 698-5200
                        Fax: (361) 698-5222
                        rclore@bandaslawfirm.com

                        Anthony E. LaCroix
                        LaCroix Law Firm, LLC
                        1600 Genessee, Suite 956
                        Kansas City, Missouri 64102
                        Tel: (816) 399-4380
                        Fax: (816) 399-4380
                        tony@lacroixlawkc.com

                        *Attorneys for Appellant Cassie Hampe*

**Certification of Compliance with Page Limitation, Typeface Requirements, and Type Style Requirements**

This brief complies with the type–volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,994 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2016 in 14–point Garamond font.

Dated: September 22, 2023        */s/ Robert W. Clore*
                                        Robert W. Clore

**Anti-Virus Certification**

In accordance with Eighth Circuit Local Rule 28A(h)(2), I hereby certify that the Brief for Appellant and the Addendum thereto have been scanned for viruses and are virus–free.

Dated: September 22, 2023          /s/ *Robert Clore*
                                   Robert Clore